UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

**BRADLEY EDWARD KIHN**,
        Plaintiff

v.                                                                  Case No. 1:19-CV-00979

        Hon. Robert J. Jonker

**BRENT DENNY**                                        **PLAINTIFF'S RESPONSE TO**
**PHILLIP HESCHE**                                   **MOTIONS TO DISMISS BY**
**SONYA KIHN**                                          **DEFENDANTS DENNY,**
**LINDA KIMMEL**                                     **HESCHE, KIHN (PINNOW)**
**STAR THOMAS**                                       **THOMAS, AND WARD**
**SUSAN WARD,**                                       **UNDER FED. R. CIV. P. 12(b)(6)**
        Defendants.

---

Patrick William O'Keefe (P59324)
Attorney for Plaintiff
O'Keefe Law, PLLC
3893 Okemos Rd. Ste B1
Okemos, MI 48864
(517) 253-0114
patrick@okeefelaw.net

---

**PLAINTIFFS RESPONSE TO MOTIONS TO DISMISS BY DEFENDANTS DENNY, HESCHE, KIHN (PINNOW), THOMAS, AND WARD UNDER FED. R. CIV. P. 12((b)(6)**

NOW COMES THE PLAINTIFF, Bradley Edward Kihn, by and through Counsel, Patrick William O'Keefe, who hereby requests this Court DENY these Defendants' motions to dismiss under Fed. R. Civ. P. 12(b)(6).

**INTRODUCTION**

Defendants Denny, Hesche, Kihn, Thomas, and Ward have filed motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing Plaintiff has failed to state a claim upon which relief can be granted. All Defendants have advanced two basic arguments.

First, Defendants state that Plaintiff is not a member of a protected class and therefore not entitled to relief under the second clauses of 42 U.S.C. § 1985(2) or (3).

Second, Defendants state that the principal of comity compels dismissal of Count II of Plaintiff's complaint as an improper collateral attack on a state court judgment in the parental termination proceeding.

Defendants Denny and Hesche, both police officers, also claim that the case should be dismissed because they have qualified immunity.

Plaintiff argues that his action should proceed under 42 U.S.C. §1985(2) and (3) because neither the second clause of subsection 2 nor the second clause of subsection 3 require a showing of class-based discrimination by Defendants. These clauses state that it is against the law for two or more persons in any State to conspire against **any citizen** to defeat the due course of justice, or to prevent or hinder the constituted authorities of any state from giving Plaintiff the equal protection of the laws. As a citizen who does not claim any class-based discrimination, Plaintiff should be allowed to assert these rights without having to show that he is a member of a protected class of persons. Moreover, if Plaintiff is required to show that he was discriminated against by some sort of class-based animus, he argues that he was discriminated against based on his marital or familial status.

## FACTUAL AND PROCEDURAL BACKGROUND

During all times relevant to the complaint, Plaintiff and Defendant Pinnow (nee Kihn) were married in December of 2005. Together, they had two biological children, H.K. and R.K. The parties separated around November of 2014 after Defendant Pinnow moved out of the marital home. The parties shared joint physical and joint legal custody of the minor children during the period of separation. However, in March 2015, Plaintiff was apprehended for

possession of a controlled substance. Shortly thereafter, Defendant Pinnow obtained a court order suspending Plaintiff's parenting time pending the outcome of that case. Meanwhile, the family court ordered a court-appointed facilitator, Defendant Kimmel, to help educate the parties on co-parenting strategies to make it easier for the minor children to transition into a dual-home environment during the waiting period of the divorce.

There was a significant pre-arrest delay in the criminal case, which took well over a year to get resolved. It took approximately 7 months for the controlled substance (0.01 grams of methamphetamine) to be tested by the Michigan State Police laboratory. Plaintiff eventually entered a guilty plea and was sentenced to 36 months of probation. The criminal case significantly delayed Plaintiff's reinstatement of parenting time, despite there being no indication that his behavior was deleterious to the minor children's health.

During the pendency of the divorce matter, the family court ordered both Plaintiff and Defendant Pinnow to undergo psychological assessments. Plaintiff submitted to his evaluation in September of 2016. Defendant Pinnow never underwent her own psychological evaluation. After waiting several months for his psychological assessment, Plaintiff grew impatient with both the Friend of the Court (FOC) and Defendant Kimmel for the delay. Defendant Kimmel and FOC were ultimately responsible for deciding when Plaintiff could resume his exercise of parenting time. During an approximate 1-year period, Defendant Kimmel saw Defendant Pinnow approximately 13 times in her role as parenting time facilitator. During that same span, Defendant Kimmel only saw Plaintiff once.

No reason was given as to why Plaintiff's parenting time was suspended from April 2015 – October 12, 2016. However, Plaintiff believes it was due to the fact that his ex-wife, Defendant Pinnow, had a very powerful family in the local community. Defendant Pinnow's mother was the

district court administrator. She was a very powerful person in that community. She was friends with many influential people in town, especially those who were in law enforcement. She was friends with most—if not all—the Defendants in this matter. The influence that the Pinnows wielded in the Ionia community cannot be ignored.

In May of 2016, Defendant Pinnow and minor child H.K. discovered video pornography recordings on an older Dish Network DVR Hopper. Defendant Pinnow claims that HK reported his father (Plaintiff) had made him watch those movies. Since Plaintiff had not seen the children since April of 2015, and given the dates of the videos being in or around January 2015, Defendant Pinnow must have surmised that Plaintiff allegedly forced H.K. to watch these videos between January 2015 – April 2015, when Plaintiff was seeing the children every other weekend. After waiting a few weeks, Defendant Pinnow notified Child Protective Services (CPS) of what they had found and her son's disclosures. CPS subsequently interviewed the minor children at their school. Minor child H.K. reported that Plaintiff forced him to watch these pornographic videos, but he did not disclose any sexual abuse.  Minor child R.K. did not report anything significant; she did not even mention being made to watch the videos or being sexually abused by Plaintiff.

Thereafter, Plaintiff was contacted by CPS. He denied H.K.'s allegation that he forced him to watch pornography. CPS substantiated the allegation of abuse (improper supervision) by concluding Plaintiff had, in fact, forced H.K. to watch pornography. This further delayed Plaintiff's efforts at restoring his parenting time.

In the criminal matter, Plaintiff was sentenced in June 2016. The recommendation and order from the FOC and family court was that Plaintiff complete any period of incarceration before restoring his parenting time. The family court did not wish to have the children being

carted to jail to visit their father. Plaintiff was sentenced to probation for 36 months and jail time was suspended pending successful completion of probation. Plaintiff was ordered to undergo random drug screens, which he passed.

At the end of June 2016, Plaintiff had one last hurdle–his psychological assessment—to clear before regaining parenting time. Defendant Kimmel allowed Plaintiff to get his assessment from a Lansing area psychologist, due to the fact Plaintiff was living in the Lansing area. There was significant delay in completing the assessment. Plaintiff was evaluated by Dr. Sharon Hobbs in September of 2016. But it still took several weeks to get the report into the hands of Defendant Kimmel. Finally, on October 12, 2016, Plaintiff received confirmation from Defendant Kimmel that she had received the report, but Kimmel complained that she needed more data from the psychologist before she could make a decision.

Defendant Ward, a licensed master social worker, was seeing H.K. and R.K. as patients. At that time, Defendant Kimmel was seeing Defendant Pinnow, and Defendant Ward was seeing H.K. and R.K. Defendants Kimmel and Ward were colleagues at Journeys Counseling Center. They worked out of the same two-story house. Kimmel was upstairs. Ward was downstairs. It is believed that Defendants Kimmel and Ward were communicating with one another concerning Plaintiff's imminent restoration of his parenting time. On October 12, 2016, Plaintiff sent Defendant Kimmel a forcefully worded email demanding that his parenting time be reinstated by the coming weekend, which would have been his weekend with the kids. It is believed that Defendants Kimmel, Ward, and Pinnow conspired to delay Plaintiff's reinstatement of his parenting time.

On October 13, 2016, one day after Plaintiff demanded that his parenting time be reinstated immediately by Defendant Kimmel, Defendant Pinnow brought H.K., who was then

approximately 10 years old, to see Defendant Ward for therapy. In a text message later that night, Defendant Ward notified Defendant Pinnow that H.K. had "talked openly about the porn movie night…."

The following day, on October 14, 2016, Defendant Pinnow visited Defendant Ward to discuss the alleged disclosure. Defendant Pinnow has claimed that Defendant Ward informed her that H.K. reported that he and his younger sibling, R.K., were sexually abused by Plaintiff back in early 2015, when H.K. and R.K. were with Plaintiff on his weekend. Allegedly, H.K. renewed his account that Plaintiff forced him to watch pornography but he added that Plaintiff penetrated R.K. with his penis and forced H.K. to masturbate Plaintiff.

Defendant Pinnow left Ward's office and drove herself to visit her mother, Cheryl Pinnow, who was having lunch at a nearby restaurant. Cheryl Pinnow, the district court administrator, was having lunch with an Ionia district court magistrate, who reportedly instructed Defendant Pinnow to go down to the Ionia County Sheriff's Office to report the matter to the authorities. After a short drive, Defendant Pinnow and her mother arrived at the sheriff's office, where they met Defendant Denny. Denny and Cheryl Pinnow had been friends for over two decades.

Defendant Denny took Pinnow's report. He then reached out to Defendant Thomas, who was a police officer with the Portland (MI) Police Department, to schedule a forensic interview of the minor children. Defendant Thomas was trained to conduct forensic interviews of minor children who are suspected of being abused. Defendant Thomas is married to Defendant Pinnow's ex-husband, but despite that, they maintained an amicable relationship. Defendant Thomas interviewed the children on October 21, 2016, wherein both H.K. and R.K. disclosed they had been sexually abused by Plaintiff.

On November 18, 2016, the Ionia County Prosecuting Attorney's Office authorized five counts of criminal sexual conduct against Plaintiff. If convicted on the first count, which alleged sexual penetration with R.K., it carried a mandatory minimum sentence of not less than 25 years. Defendant Denny then arrested Plaintiff at his place of employment in Lansing. Plaintiff was held without bail for 82 days in the Ionia County Jail.

Defendant Hesche, a sergeant with the sheriff's office, assisted Defendant Denny in the criminal investigation process. In emails, Defendant Hesche expressed a deep-seeded hatred for Plaintiff and his criminal defense attorney. Hesche further expressed that he could not wait until Plaintiff got convicted so he could essentially tell Plaintiff's attorney to shove it. The exact words Hesche used are not necessary to reproduce in this brief, but they are enough to make a sailor blush. Through the pendency of the criminal litigation, Defendants Hesche and Denny communicated with the prosecuting attorneys via email. They expressed a strong disliking for Plaintiff and his attorney and further indicated a strong desire to see Plaintiff convicted. The prosecutors made extraordinary efforts to convict the Plaintiff and take his children from him.

Before the criminal trial commenced, Defendant Ward was held in contempt of court for forging a doctor's signature. The trial court had also ordered Ward to produce her notes of some of her therapy sessions with H.K. and R.K. on and after the time of the disclosures.

On January 2, 2018, six days before the criminal trial was set to begin, a renowned handwriting expert hired by Plaintiff produced a report which contained his opinion that Defendant Ward's hand-written therapy notes were not recorded contemporaneously with the children's visits, but rather written in a stack. In essence, her notes were forgeries. Defendant Ward would later testify that she recorded her notes contemporaneously with the therapy sessions, a statement that was expressly contradicted by Plaintiff's handwriting expert.

After a two-week trial, Plaintiff was acquitted of all five criminal counts lodged against him. Subsequently, the prosecuting attorney's office notified Plaintiff that they would proceed with their efforts to terminate Plaintiff's rights to parent his children. In May of 2018, less than four months after his acquittal, Defendants and their prosecutors prevailed in their efforts to terminate Plaintiff's fundamental right to parent his children.

Defendants motions to dismiss herein provide a very limited statement of facts. Plaintiff's lengthier description of the facts is designed to emphasize that this complaint is not rooted in a wild "conspiracy theory", but rather to underscore the extraordinary efforts of these Defendants to deprive him of constitutional rights.

## STANDARD OF REVIEW

Dismissal is appropriate under Fed. R. Civ. P. 12(b)(6) where a plaintiff fails to state a claim upon which relief can be granted. Dismissal is proper where a plaintiff cannot establish any set of facts that would entitle him to the relief sought. *Conley v. Gibson*, 355 U.S. 41, 45; 78 S. Ct. 99, 2 L.Ed 2d 80 (1957). In ruling on a Rule 12(b)(6) motion, a court must construe the complaint liberally in plaintiff's favor and accept as true all the factual allegations and permissible inferences therein, but the court "need not accept as true legal conclusions or unwarranted factual inferences." *Hunter v. Sec'y of US Army*, 565 F.3d 986, 992 (6th Cir. 2009) (quoting *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008)); *Westlake v. Lucas*, 537 F.3d 857, 858 (6th Cir. 1976).

Under Rule 12(b)(6), "courts are required to accept all well-pleaded allegations in the complaint as true and to draw all reasonable inferences in favor of the non-moving party." *Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008) (citing *In re Rockefeller Ctr. Props. Sees. Litig.*, 311 F.3d 198, 215-16 (3d Cir. 2002)). However, the factual allegations set

forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The pleading must contain more than "labels and conclusions or a formulaic recitation of the elements of a cause of action...." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555) (internal citations and quotations omitted). Thus, a complaint will survive a motion to dismiss if it contains "sufficient factual matter, as accepted as true, to state a claim to relief that is plausible on its face." Id. (quoting *Twombly*, 550 U.S. at 570) (internal citations and quotations omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. *Mammaro v. Omega Lab., Inc.* (D. N.J. 2014).

## RELEVANT LAW AND ARGUMENT

The Ku Klux Klan Act of 1871 was enacted to address the continued discrimination by Klansmen in southern states after the Civil War. But much like the passage of the 13th and 14th Amendments, the Act is rooted in the rights of all citizens to equal protection under the law. The statute, as amended, never mentions race, sex, religion, or national origin.

The statute in full is stated below. The basis for Plaintiff's two claims in the complaint appear in **bold**:

**§1985. Conspiracy to interfere with civil rights**

*(1) Preventing officer from performing duties.*

If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required

to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties;

*(2) Obstructing justice; intimidating party, witness, or juror*

If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; **or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;**

*(3) Depriving persons of rights or privileges*

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; **or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws**; or if two or more persons conspire to prevent by force,

intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators. 42 U.S.C. Sec. 1985.

### A. PLAINTIFF'S CLAIMS BROUGHT UNDER THE SECOND CLAUSE OF 42 U.S.C. § 1985(2) AND (3) SHOULD SURVIVE DEFENDANTS' MOTIONS TO DISMISS BECAUSE PLAINTIFF NEED NOT SHOW HE IS A MEMBER OF A PROTECTED CLASS

Defendants argue that Plaintiff cannot recover under 42 U.S.C. § 1985(2) or 42 U.S.C. § 1985(3) because he is not a member of a protected class. Defendants correctly infer that Plaintiff's claims are rooted in Defendants' violations of the second clause of subsection (2) or the second clause of subsection (3). Subsection (2) proscribes conspiracies to interfere with the administration of justice in state courts "with intent to deny to **any citizen** the equal protection of the laws." Subsection (3) proscribes conspiracies to deny **any person** enjoyment of "equal protection of the laws" and "equal privileges and immunities under the laws."

The United States Supreme Court has established the *outer edges* of what persons are afforded protection under Section 1985(3). *Griffin v. Breckenridge*, 403 U.S. 88, 92 S.Ct. 1790, 29 L.Ed.2d 338 (1971). The Supreme Court has determined that discrimination against a *class* based on *race* falls within the protections of Section 1985(3). *Id.* Conversely, the Court has

determined that discrimination against a *class* based on ***economic grounds*** does not come under the statute. *United Brotherhood of Carpenters & Joiners of America, Local 610 v. Scott*, 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). However, the Supreme Court has not defined the **middle ground**. *Lewis v. Pearson Foundation, Inc.,* 908 F.2d 318, *vacated*, 917 F.2d (8th Cir. 1990), No. 87-894 c(2) slip op. at 1-2 (E.D. Mo. Jan. 15, 1988). The aforementioned decisions do not address the situation where the Defendants conspired to deprive Plaintiff of his civil rights due to invidious discrimination against our individual Plaintiff who is not complaining of class-based discrimination.

Defendants state that the Sixth Circuit has explicitly held that claims brought under the second clause of 42 U.S.C. § 1985(2) and the first clause of 42 U.S.C. § 1985(3) share a common requirement, namely that "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Alexander v. Rosen*, 804 F.3d 1203, 1207-1208 (6th Cir. 2015). But the *first* clause of subsection 3 that was applicable in *Alexander*—if two or more persons in any State or Territory conspire or go in disguise on the highway—is not applicable in this case. Plaintiff is not alleging that Defendants conspired on the highway or went in disguise. Plaintiff is simply alleging that Defendants conspired under the *second* clause of subsection 2 and/or the *second* clause of subsection 3. These sections do not require a showing of any class-based animus. Rather, they clearly and unequivocally offer relief to "any citizen" and "any person" who is the victim of such constitutional violations. Plaintiff argues that the cases cited by Defendants are distinguishable from this case.

Defendant Pinnow states that Plaintiff does not allege he is a member of a "discrete and insular minority." Plaintiff concedes that "[a] *class* protected by section 1985(3) must possess the characteristics of a discrete and insular minority, such as race, national origin, or gender,"

*Haverstick Enters., Inc. v. Fin. Fed. Credit, Inc.*, 32 F.3d 989, 994 (6th Cir.1994); *Vakilian v. Shaw*, 335 F.3d 509 (6th Cir. 2003). However, Plaintiff is not proceeding based on some membership in a protected *class* of persons. Rather, he is proceeding as an individual *citizen* and person.

*Haverstick* is distinguishable from our case. The *class* of Plaintiffs in *Haverstick* complained that a private repossession effected under Michigan law by several defendants offended their rights under the Constitution of the United States. *Haverstick* at 989. Those plaintiffs urged that these infringements comprised actionable wrongs under 42 U.S.C. Secs. 1983, 1985(3), and 1986. *Id.* They further asserted they were members of a *class* protected by section 1985(3), and therefore they both were entitled to recover from defendants because they were members of a protected *class* rather than as individual citizens. *Id.* They claimed that the defendants violated their constitutional rights when the municipal defendants and the credit union defendant used Michigan's self-help statute to *repossess a truck* which Plaintiff *Haverstick* had defaulted on. *Id.* Conversely, in this case we have a Plaintiff who is entitled to recover from defendants because as a private *citizen*, he is entitled to seek damages from Defendants for a violation of the *second* clause of subsections 2 and 3, not the first clause.

The *Alexander* case is distinguishable. In short, plaintiff Alexander was crazy. He alleged that a federal judge, state judge, and multiple state actors had conspired to deprive his civil rights because he did not agree with the state's support orders. In *Alexander v. Rosen*, 804 F.3d 1203 (6th Cir. 2015), the allegation was that the multiple defendants violated federal civil rights law—specifically, 42 U.S.C. § 1985(2), which prohibits "two or more persons [from] conspir[ing]" to interfere with state judicial proceedings "with intent to deny to any citizen the equal protection of the laws." *Id.* Plaintiff Alexander was seeking damages in federal court alleging that he was the

victim of a conspiracy concocted by a federal judge, a Michigan family court judge, and several state administrative employees. *Id.* The 6th Circuit held that Plaintiff Alexander failed to assert in his pleadings facts sufficient to form a plausible belief that the Defendants engaged in invidious discrimination. *Id.*

In *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), the Supreme Court looked at the first clause of 42 U.S.C. § 1985(3). Plaintiffs brought a cause of action under 42 U.S.C. § 1985(3) alleging that the private Defendants conspired to deprive the Plaintiffs of equal protection of the laws. The Supreme Court held that conspiracy claims under 42 U.S.C. § 1985(3) can be made against private conspirators; in other words, there was no "state action" requirement in 42 U.S.C. § 1985(3). *Griffin*, 403 U.S. 88, at 96. There were two main holdings in *Griffin*: (1) that Congress had the authority to enact 42 U.S.C. § 1985(3); and (2) that § 1985(3) reached private as well as "state action" conspiracies. See *Id.*, generally. But the Court in Griffin did not look at the second or third clauses of 42 U.S.C. § 1985(3), nor did it define which persons or classes of persons will be entitled to protection.

*Griffin* also is distinguishable from this case. In Griffin, there was a *class* of plaintiffs who filed a complaint against multiple defendants on the theory that defendants conspired against them on the basis of their race. *Griffin* at 89. They sought damages under the *first* clause of § 1985(3).

In this case, Plaintiff was married to Defendant Pinnow (nee Kihn). They had two children together, H.K. and R.K. When Defendant Pinnow moved out, Plaintiff remained living in the marital home, where he had his children every other weekend. Unlike the Alexander case, Plaintiff here is not attempting to turn his disagreements with the defendants' actions into evidence of "racketeering," absent plausible allegations of misconduct or fraud. For that reason,

the court ruled he had failed to state an actionable claim. *Alexander v. Rosen*, 804 F.3d 1203, 1207 (6th Cir. 2015). It is also important to note that the *Alexander* court dismissed his claims because there was no plausible evidence of a conspiracy. *Id.*

In this case, there is ample evidence of a conspiracy, if not multiple conspiracies. The first conspiracy was to have Plaintiff's bond with his children broken and convict him of crimes he did not commit. The second conspiracy was to take away Plaintiff's children despite his earlier acquittal.

### *Kush v. Rutledge*

Plaintiff *Kush*, a white male, and former athlete at Arizona State University, sued in Federal District Court, and in state administrative and judicial proceedings, respondent, asserted a variety of common-law and statutory claims against Arizona State University and certain of its officials (including petitioners) arising out of incidents occurring while he was a member of the University's football squad. One of the claims was that three of the petitioners had engaged in a conspiracy to intimidate and threaten various potential material witnesses in order to prevent them from testifying "freely, fully and truthfully" in the action, in violation of the first part of 42 U.S.C. § 1985(2) (1976 ed., Supp. V). *Kush v. Rutledge,* 460 U.S. 719, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983).

Under the second part of § 1985(2), the Court held that because "there exists no sufficient allegation of racial or class-based invidiously discriminatory animus," respondent had failed to state a § 1985 claim because he had not shown that he was a member of an identifiable class, and because his general allegations of a conspiracy were unsupported by specific facts. *Id.* The Court of Appeals affirmed the district court and the Supreme Court affirmed the Court of Appeals. "Given the structure of § 2 of the 1871 Act, it is clear that Congress did not intend to

impose a requirement of class-based animus on persons seeking to prove a violation of their rights under the *first* clause of § 1985(2). *Kush* at 726. But the Court really did not address the *second* clause.

Defendants argue that *Kush* prohibits a person from collecting under the 2nd clause of § 1985(2) unless he can show he was a victim of class-based animus. Plaintiff respectfully disagrees. Defendants are correct in stating that the *first* clause of subsection 2 is *not* applicable. Plaintiff is *not* alleging that Defendants conspired to intimidate or prevent Plaintiff from attending court or testifying. However, Plaintiff contends that the second clause of subsection 2 is applicable. The second clause of § 1985(2) states, in part:

> **"or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to <u>any citizen</u> the equal protection of the laws…"**

Therefore, the words "any citizen" would include our Plaintiff. He is a citizen of the United States of America. He enjoys the same protections of our Constitution as those citizens who belong to discrete and insular minorities. This second clause does not expressly require any showing that the discrimination was class-based, as the Defendants have argued. Plaintiff is not suggesting that he was targeted based on his membership to a particular class. Therefore, he should not be expected to show that he was the target of class-based animus.

   B.  **THE PRINCIPAL OF COMITY (AND ABSTENTION) SHOULD NOT COMPEL DISMISSAL OF COUNT II IN PLAINTIFF'S COMPLAINT BECAUSE IT IS NOT A COLLATERAL ATTACK ON A STATE COURT JUDGMENT IN THE PARENTAL TERMINATION PROCEEDING, BUT RATHER A SECOND CLAIM FOR DAMAGES BASED ON DEFENDANTS' CONSPIRATORIAL EFFORTS TO DESTROY PLAINTIFF'S CONSTITUTIONAL LIBERTY INTERESTS IN PARENTING HIS CHILDREN**

Defendants argue that Plaintiff's claims should be dismissed because of the doctrine of comity and abstention. Plaintiff respectfully disagrees. As a general rule federal courts will not entertain matters involving domestic relations even though *diversity* of citizenship exists. *Firestone v. Cleveland Trust Co.*, 654 F.2d 1212 (6th Cir. 1981). But this suit is not based on *diversity* jurisdiction. Rather, it centers on a *federal question*, to wit, whether 42 U.S.C. § 1985 has been violated.

The defendants also invoke the *Rooker–Feldman* doctrine, which prevents federal courts from exercising jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005) ; see In re Smith, 349 Fed.Appx. 12, 17–18 (6th Cir.2009) (Sutton, J., concurring in part and dissenting in part).

That doctrine does not apply here, because Plaintiff's alleged injury did not emerge from the state court judgment. He does not appeal the state court's parental termination decision; he challenges the conduct of the individuals who happened to participate in that decision. See *Skinner v. Switzer*, 562 U.S. 521, 531–33, 131 S.Ct. 1289, 179 L.Ed.2d 233 (2011). *Alexander v. Rosen*, 804 F.3d 1203 (6th Cir. 2015). Plaintiff is not collaterally attacking the state court's decision to terminate his parental rights. Plaintiff agrees that this court does not have that authority and he is not asking this Court to overturn the state's decision. Here, Plaintiff is attacking the Defendants' conspiratorial efforts to deprive him of important constitutional rights, as opposed to attacking the state court's decision.

The doctrine of comity is not applicable here. This is not a domestic relations case. This is a civil rights case involving an important federal question, namely, whether these Defendants

violated the Ku Klux Klan Act. As was stated in the complaint, this Court has jurisdiction due to the applicability of a federal question. Therefore, Plaintiff respectfully request that this Court deny Defendants' motions to dismiss on comity grounds.

### C. DEFENDANTS DENNY AND HESCHE ARE NOT ENTITLED TO QUALIFIED IMMUNITY BECAUSE THEY KNEW OR SHOULD HAVE KNOWN THAT THEY WERE VIOLATING PLAINTIFF'S LIBERTY INTEREST IN PARENTING HIS CHILDREN

As state actors, Defendants Denny and Hesche argue they are entitled to a dismissal of Plaintiff's claims on the grounds of qualified immunity. In performing the qualified immunity analysis, the court must initially determine if a plaintiff possessed a constitutional right that had been invaded. *Megenity v. Stenger*, 27 F.3d 1120, 1123-24 (6th Cir.1994). Here, Plaintiff enjoyed a clearly established right not to have his individual liberty interests stripped by state action in violation of the constitution. See, e.g., *Tulsa Professional Collection Services v. Pope*, 485 U.S. 478, 485-86, 108 S.Ct. 1340 1345, 99 L.Ed.2d 565 (1988). Additionally, under the 4th Amendment, Plaintiff has a right to be free from unreasonable searches and seizures. The conspiratorial actions of these defendants resulted in Plaintiff being forced to serve 82 days in jail for crimes he did not commit. Additionally, under the 14th Amendment, Plaintiff had the right to be free of the state's deprivation of his right to life, liberty and property without due process of law. The liberty interest complained of here is the Defendants' infringement on his fundamental right to parent his children.

Having concluded that the first requirement was satisfied, the court next must decide if the state actor was aware, or reasonably should have been aware, that his conduct infringed a constitutional right. However, if a court concludes after making the initial analysis that a defendant is guilty of violating a legal right possessed by the plaintiff, we then look to see whether a reasonable public official would have been aware that his conduct violates the right in

question. If we conclude that a reasonable public official would not have been aware that he was committing a violation, we then afford immunity. *Megenity*, supra, at 1124. *Haverstick Enterprises, Inc. v. Financial Federal Credit, Inc.,* 32 F.3d 989 (6th Cir. 1994).

Construing the evidence here most favorably for the Plaintiff, it can be said that both Defendants Denny and Hesche knew or reasonably should have known that their actions or failure to act translated into state action. At all times relevant to the complaint, both Defendants were state actors who knew or reasonably should have known that their official actions of attempting to convict Plaintiff of crimes he did not commit and strip his parental rights were not done objectively in good faith. These conspiratorial actions are inconsistent with their assigned duties of doing a full and unbiased investigation of the allegations made by Defendant Pinnow. A reasonable officer in their position would have known that their actions constituted invalid participation in the detention of Plaintiff and deprivation of his parental rights.

## RELIEF REQUESTED

The Plaintiff respectfully requests that the Court deny the Defendants' motions to dismiss under Fed. R. Civ. P. 12(b)(6) as the complaint does not fail to state a claim upon which relief can be granted.

Respectfully submitted,

O'KEEFE LAW, PLLC

Dated: March 12, 2020        BY:    */S/Patrick William O'Keefe*
                                    Patrick William O'Keefe (P59324)
                                    Attorney for Plaintiff